**IN THE COURT OF APPEALS OF IOWA**

No. 14-1573
Filed March 11, 2015

**IN THE INTEREST OF H.E.,**
**Minor Child,**

**L.E., Mother,**
**Appellant,**

**M.E., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Poweshiek County, Rose Ann

Mefford, District Associate Judge.

Parents separately appeal from the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Dennis E. McKelvie of McKelvie Law Office, Grinnell, for appellant mother.

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, and Rebecca L. Petig, County Attorney, for appellee State.

Fred Steifel, Victor, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

The mother and father of H.E., born in May 2010, separately appeal the termination of their parental rights. Upon our de novo review, it is clear that the child who had been adjudicated a child in need of assistance (CINA) was four years of age, had been out of the parents' custody for more than the last twelve consecutive months, and could not be returned to their custody at the present time. We also conclude termination of parental rights will allow the child to gain the permanency she deserves. Finding no resistance to the juvenile court's order on remand conforming the amended petition to the proof, we affirm the termination of each parent's parental rights under Iowa Code section 232.116(1)(f) (2013).

**I. Scope and Standard of Review.**

We conduct a de novo review of termination-of-parental-rights proceedings. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). On appeal, we affirm the juvenile court's termination order on any ground alleged that we find supported by clear and convincing evidence. *Id.* at 707.

**II. Background Facts.**

On January 2, 2013, the child came to the attention of the department of human services and the juvenile court when a search warrant was executed on the home in which the mother and child resided with several others. The application for temporary removal asserted that when the warrant was executed, needles were found that had blood on them and tested positive for methamphetamine. Also found was a mirror with white residue on it. The needles and mirror were accessible to H.E. The mother attributed the drug

paraphernalia to the child's uncle, but later admitted using methamphetamine in the month prior to the removal, as well as using marijuana regularly. H.E.'s father was in jail at the time for a probation violation. A child abuse assessment found the mother had failed to provide critical care.

The child was removed from the parents' custody and placed in the care of the paternal grandfather. While he has provided a caring and loving home for the child, he informed the juvenile court he is not a permanent option for the child due to his age (eighty-three years old at the time of the termination trial).

The child was adjudicated CINA on February 14, 2013, by reason of the mother's failure to exercise a reasonable degree of care in supervising the child, the parents' drug abuse, and the father's incarceration.

The mother was ordered to submit to random drug screens and to obtain substance abuse and mental health evaluations. She failed to provide drug screens on a number of occasions. She did obtain a substance abuse evaluation, which recommended extended outpatient treatment. The mother began substance abuse treatment; however, in December 2013 the mother was unsuccessfully discharged from substance abuse treatment for lack of attendance. She continually resisted getting a mental health evaluation ordered by the juvenile court in June 2013. She did not move beyond supervised visits.

The father, in October 2012, was found in possession of methamphetamine while on probation. He was convicted and began serving a prison term. He was not available for services during the pendency of the CINA proceedings. The grandfather took the child to visit the father in prison almost every week.

A petition to terminate parental rights was filed on October 22, 2013. The trial was held on January 28 and February 7, 2014. The mother testified the drugs found during the warrant execution belonged to her brother, H.E.'s uncle. Four generations of family members were living in the house at the time: H.E.'s great-grandmother (who owned the house), H.E.'s grandmother (who was ill), H.E.'s mother, H.E.'s uncle, and H.E. and her half-sister. The mother stated she had to be there at the house to care for her ailing mother, who died in December 2013. She further testified she had tried to convince others that H.E.'s uncle needed to leave the house. She testified he was no longer in the house as he had been convicted and imprisoned, so it was she and her grandmother in the house at present. The mother was not employed. She was not in substance abuse treatment. She denied the need for a mental health evaluation or treatment.

The father was still in prison but testified he was participating in substance abuse treatment and hoped to be paroled in March. He testified he had been prescribed medication for mental health issues[1] while in prison and planned to continue with those upon his release. He asked that the court allow him a six-month extension of time to participate in services and show he was able to have his child back in his care. On cross-examination, the father acknowledged he had a lengthy history of drug abuse and criminal convictions.[2] He also

---

[1] The father testified he had "a very bad anxiety problem."

[2] He acknowledged a 2001 controlled-substance conviction, a 2005 controlled-substance conviction, a November 2011 prescription-drug conviction, and a February 2013 possession-of-controlled-substance conviction, third offense.

acknowledged he was living in his father's home in the basement apartment[3] when he was arrested for drug related offenses—first in June 2011 (for a urinalysis "dirty" with "a prescription drug and marijuana") and again in October 2012 (for possession of methamphetamine).

The paternal grandfather testified he was willing to continue to care for the child temporarily when the father was released from prison. Both the father and grandfather testified that if parental rights were terminated, the child should be placed with a relative, Becky.

The court reconsidered and granted the father's motion to reopen the record, and further testimony was received on July 11, 2014. The father testified he had been released from prison in March 2014. He moved into the paternal grandfather's basement apartment. The child also resided with the grandfather, and the father helped care for the child, although always supervised. He was working twelve-hour shifts from 6 p.m. to 6 a.m. He was providing drug screens and meeting regularly with his parole officer. The father was taking medications for anxiety, depression, and insomnia. He testified he was ready to care of H.E.

The department of human services worker testified the mother had made no progress since the earlier termination hearings and her visits remained fully supervised. The worker testified that while the father appeared to be doing well there were doubts as to his ability to maintain sobriety long-term. The worker also testified the child was in need of permanency, having been out of the

---

[3] The mother and father were living in the apartment in the grandfather's basement when the child was born in 2010. The mother and child moved out after the father was arrested—the mother testified that she and the child lived elsewhere for a year and a half, which would translate to after the 2011 arrest. The grandfather testified the child was only out of his home for about three months.

parents' custody for eighteen months. The worker testified that if the father continued to do well for another three months, the department might consider moving to unsupervised visits.

Though the child was four years of age on the last day of the termination proceeding, the original petition to terminate rights alleged the child was three years of age, and sought termination pursuant to Iowa Code section 232.116(1)(h) (2013).[4] The juvenile court terminated parental rights, finding (1) the child was four years of age, (2) had been adjudicated a child in need of assistance on February 14, 2013, by reason of the mother's failure to exercise a reasonable degree of care in supervising the child, and the parents' drug abuse and the father's incarceration, (3) had been out of the parents' custody since January 2013 (more than eighteen consecutive months), and (4) could not be returned to either parent at the present time. Both parents appealed.

**III. Discussion.**

*A. Statutory grounds.*

On limited remand from the supreme court, and without objection by either parent, the petition was amended to "conform to the proof" and assert termination was proper under Iowa Code section 232.116(1)(f). *See In re M.T.*, 613 N.W.2d

---

[4] Section 232.116(1)(h) authorizes the juvenile court to terminate parental rights if it "finds that all of the following have occurred":
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

690, 693 (Iowa Ct. App. 2000). After the limited remand, the supreme court "determine[d] the appellants shall file amended petitions" on appeal. Each parent filed a statement with the court that the limited remand "did not affect the issues" argued on appeal. Each asserts statutory grounds were not proved by clear and convincing evidence, specifying the fourth element that the child cannot be returned to the parent. Neither parent raises an issue with the age element.

Pursuant to subparagraph (f), the juvenile court may terminate parental rights if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Upon our de novo review, it is clear that the child who had been adjudicated CINA was four years of age, had been out of the parents' custody for more than the last twelve consecutive months, and could not be returned to their custody at the present time. Finding no resistance to the juvenile court's order on remand conforming the amended petition to the proof, we affirm the termination of each parent's parental rights under Iowa Code section 232.116(1)(f). *See M.T.*, 613 N.W.2d at 693.

"As we have previously noted, '[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's

long-term best interests.'" *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). In the case involving a child four years old, the statutory timeframe is set at twelve consecutive months. *See* Iowa Code § 232.116(f)(3). H.E. had been out of her parents' custody for more than eighteen months. While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000).

The child has been out of the mother's custody since January 2013. The mother was not participating in substance abuse or mental health treatment and remained unemployed at the time of the termination trial. The mother did not follow through with services and offered a number of excuses, which were unconvincing. Simply put, the mother had not addressed the concerns raised by the juvenile proceedings. H.E. "simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) (discussing the parent's lack of motivation to change).

As for the father, insight for the future can be gained from the father's past actions. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the parents' past performance and motivations."). In light of his long history of admitted substance abuse, four months of sobriety and participation in services *after* the initial termination trial dates does not fill the court with confidence. Additional time would be necessary for the father to demonstrate he is able to maintain sobriety.

"If a child cannot be returned to the parents [within the statutory timeline], termination should occur so long as it is in the best interests of the child and the juvenile court does not find an exception to termination that warrants a different result." *A.M.*, 843 N.W.2d at 111.

*B. Best interests.*

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the [child's] best interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). In evaluating this issue, we "'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

The mother contends termination of her parental rights is not in the child's best interests, arguing that the child and she have a close bond. Iowa Code section 232.116(3)(c) allows the juvenile court not to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory.'" *A.M.*, 843 N.W.2d at 113 (citation omitted). We are not persuaded the bond between mother and child precludes termination here. The mother has not followed through with services and has not made her child a priority in her life. The child is in need of and deserves stability and permanency, which the mother is unable to provide. We therefore affirm the termination of the mother's parental rights.

The father summarily states termination in not the child's best interests. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. The juvenile court stated the child "is very adoptable and has relatives seeking to adopt her." Giving primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child, we conclude termination of parental rights will allow the child to gain the permanency she deserves.

**AFFIRMED ON BOTH APPEALS.**